UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AHMED TALEB AJELI,<br><br>Petitioner(s),<br>v.<br><br>BRUCE SCOTT, et al.,<br><br>Respondent(s). | CASE NO. C26-3681-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner filed a petition for a writ of habeas corpus, asserting that his detention by Immigration and Customs Enforcement ("ICE") violated his due process rights. Dkt. No. 1. The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 1, 7, 12. For the reasons stated below, the Court will grant Petitioner's habeas petition.

## I. BACKGROUND

Petitioner is a native and citizen of Mauritania, who was encountered at or near Lukeville, Arizona, on August 13, 2023. Dkt. No. 8 ¶ 4. Petitioner was taken into immigration custody for expedited removal after Customs and Border Protection ("CBP") determined that Petitioner did not lawfully enter the United States. *Id.* On September 6, 2023, after an interpreter in Hassaniya (Petitioner's native language) could not be secured to conduct a credible fear interview, DHS instead issued him a Notice to Appear ("NTA") charging him as a noncitizen present without admission and placed him in removal proceedings. *Id.* ¶ 6.

On September 18, 2023, an Immigration Judge ("IJ") granted Petitioner's request for a custody redetermination and released him on a $3,000 bond. Dkt. No. 8 ¶ 7. The IJ imposed the following conditions on Petitioner's release:

> 1. Respondent must reside with sponsor and seek DHS approval prior to changing residence; 2. Respondent must not commit any violation of criminal or immigration law, including working without authorization; 3. Alternatives to Detention (ATD) such as electronic monitoring may be imposed at DHS discretion. 4. Respondent to attend all scheduled hearings unless the immigration judge has approved your written request to transfer your case.

Dkt. No. 9-3 at 2.

On February 9, 2026, an IJ in New York deemed Petitioner's applications for relief abandoned and ordered him removed to Mauritania. Dkt. No. 9-5. Petitioner timely appealed to the Board of Immigration Appeals ("BIA") on February 24, 2026, and his appeal remains pending. Dkt. No. 2 ¶ 8.

On July 13, 2026, Petitioner was arrested in Miami, Florida for selling single cigarettes. Dkt. No. 11-1 at 6; Dkt. No. 8 ¶ 9. Plaintiff contends that he does "not understand English well" and "did not know that selling cigarettes in that manner was prohibited." Dkt. No. 2 ¶ 12. That charge remains pending, and the record contains no conviction. Dkt. 11-1 at 6; Dkt. No. 9-1 at 2–3. The next day, ICE agents encountered Petitioner at the Turner Guilford Knight Correctional Center in Miami, Florida, and took him into immigration custody. Dkt. No. 8 ¶ 9. ICE issued a Form I-200 arrest warrant on July 15, 2026, and served it on Petitioner on July 16, 2026. Dkt. No. 11-1 at 2. On July 23, 2026, Petitioner was transferred to the Northwest ICE Processing Center ("NWIPC"), where he remains detained. Dkt. No. 8 ¶¶ 10, 12.

Petitioner filed his petition for habeas corpus on September 30, 2026. Dkt. No. 1. On October 6, 2026, the Court appointed counsel. Dkt. No. 5. The Government filed its return on

October 14, 2026, and Petitioner filed his traverse on October 28, 2026. Dkt. Nos. 7, 12. This matter is now ripe for review.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by … the district courts … within their respective jurisdictions." 28 U.S.C. § 2241(a). To succeed on his petition, Petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. ANALYSIS

### A. Petitioner Was Subject to § 1226(a) When He Was Re-Detained

The Government contends that Petitioner falls within the mandatory detention scheme under Section 1225(b)(2) as an applicant for admission who was initially encountered at the United States border. Dkt. No. 7 at 4–5. Petitioner disagrees and argues that the Government's release of petitioner on bond and charging of him as a noncitizen unlawfully present in the country, rather than an "arriving" noncitizen, means he is not subject to mandatory detention under Section 1225(b)(2). Dkt. No. 12 at 8–10. The Court agrees with Petitioner.

As this Court and the Ninth Circuit have ruled in countless situations, Petitioner's status as a person previously released on immigration bond, and who has been living in this country for years, is inconsistent with the Government's expanded view of the Immigration and Nationality Act, as amended. *See, e.g.*, *Rodriguez Vasquez v. Bostock*, 183 F.4th 1160, 1190, 1193 (9th Cir. 2026) (rejecting theory subjecting noncitizens present in the United States to mandatory detention regardless of the amount of time they have lived in the country, and holding that § 1226, not § 1225(b)(2), applies to "unadmitted [noncitizens] present in the interior of the country); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like

Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)). "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases).

Consistent with these cases, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner falls outside the mandatory detention scheme of Section 1225(b) and was instead detained under Section 1226(a). Such a holding is not only consistent with the caselaw discussed above, but consistent with the Government's own treatment of Petitioner. First, when the Government served Petitioner with an NTA on September 5, 2023, that document stated that Petitioner was a person "present in the United States who has not been admitted or paroled" as opposed to an "arriving" noncitizen under Section 1225. Dkt. No. 9-4 at 2. The NTA charged Petitioner as subject to removal under Section "212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or parole[.]" *Id.* Petitioner then requested a custody redetermination and was released on bond. The Government fails to reconcile Petitioner's release on bond with its argument that Petitioner was subject to mandatory detention under Section 1225(b). *See generally Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *6 (W.D. Wash. Nov. 26, 2025) (explaining that petitioner's "release from custody indicates that he was and is subject to detention under § 1226").

The Government's argument to the contrary rests entirely on the circumstances of Petitioner's initial border encounter in 2023 and the regulatory designation that once made noncitizens apprehended within 14 days of entry and 100 air miles of the border eligible for expedited removal. *See* Dkt. No. 7 at 4. However, those circumstances are irrelevant where the Government subsequently abandoned expedited removal and issued Petitioner an NTA and placed him in full removal proceedings. Dkt. No. 8 ¶ 6; Dkt. No. 9-4 at 2.

In sum, the entire record makes clear that Petitioner's detention is governed by 8 U.S.C. § 1226 rather than § 1225. "[T]he government cannot switch tracks and subject Petitioner[] to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioner[] in removal proceedings … and released [hi]m … under section 1226(a)." *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 936 (N.D. Cal. 2025). Having determined the statutory basis for Petitioner's detention, the Court turns to Petitioner's due process claim.

**B. Petitioner's Detention Violates Due Process**

Petitioner contends that his arrest and re-detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Supreme Court has found that civil immigration detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026) (quoting *Zadvydas*, 533 U.S. at 690).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

1. <u>Petitioner has a protected interest in his liberty.</u>

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Here, where Petitioner was released on bond in September 2023, and had been living freely in his community for approximately three years before he was re-detained, "the constitution does not countenance fictional erasure of his actual presence in this country—or his concomitant due process rights." *Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *5 (W.D. Wash. Feb. 13, 2026). Since his release, Petitioner has "form[ed] strong friendships, receiv[ed] a work permit and a Social Security number" and maintained stable employment. Dkt. No. 12 at 2. Thus, Petitioner was established a "liberty interest in his continued liberty" when he was released from ICE custody in September 2023 with conditions of bond. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093, No. 2:25-cv-00647-DJC-DMC,

(E.D. Cal. Mar. 3, 2025). *See also Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) ("A person who has been released from physical restraint gains a liberty interest that is valuable and must be seen as within the protection of the Due Process Clause."); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). The Court therefore finds the first *Mathews* factor favors Petitioner.

2. <u>The risk of erroneous deprivation of liberty is high.</u>

The Court next considers the risk of an erroneous deprivation and the value of additional safeguards. The Government argues that "the risk of a constitutionally significant deprivation of Petitioner's liberty without a pre-detention hearing is minimal" where Petitioner's re-detention was based certain "objective facts"—namely, that Petitioner violated conditions of his bond by "fail[ing] to seek approval from DHS prior to changing residences" and "violat[ing] criminal law when he was arrested for selling single cigarettes in Florida." Dkt. No. 7 at 6–7.

The Court is not persuaded. To begin, the factual issue of whether Petitioner in fact relocated without seeking DHS approval is disputed. Petitioner argues that the Government's evidence on this point—a declaration from an ICE officer who stated "[b]ased on Petitioner not seeking DHS approval prior to moving to Miami and violating criminal law, he was determined to have violated his release conditions"—is insufficient where the "ICE officer never explains what evidence he relied on to determine Petitioner relocated without seeking DHS approval, nor did the Government provide any documentation to support the officer's statement." Dkt. No. 12 at 6 (citing Dkt. No. 8 ¶ 9). The parties' conflicting positions on this issue underscore the importance of a pre-deprivation hearing, which "would have provided an opportunity for the Petitioner to contest this allegation and the Government to explain why they believed this violation occurred."

*Id*. In any event, "[t]o the extent Petitioner may have violated the conditions of his release, such a fact does not strip Petitioner of his due process right to notice and a hearing prior to re-detainment." *Vargas-Murillo v. Mullin*, No. 5:26-CV-03579 ADS, 2026 WL 2647986, at *2 (C.D. Cal. Sept. 8, 2026); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

The Government's reliance on Petitioner's criminal charge is similarly unavailing. Dkt. No. 7 at 7. "[C]ourts typically draw a distinction where there has only been an arrest or pending charges, and … have repeatedly found that the government violated due process regardless of a non-citizen's pending criminal charges when they are re-detained without notice or an opportunity to be heard." *Garcia Radillo v. Scott*, 2026 WL 2168044, at *3 (W.D. Wash. July 28, 2026) (collecting cases). The record here contains no evidence that Petitioner was convicted: the Government only states that Petitioner was arrested and charged for selling single cigarettes without mentioning a conviction. *See* Dkt. No. 7 at 3; Dkt. No. 9 at 2–3. But even more to the point, the Government's argument fails because "the central issue here is the process by which re-detention occurred, not whether it was warranted." *Fiston v. Bondi*, No. 2:26-CV-00904-JHC, 2026 WL 926064, at *4 (W.D. Wash. Apr. 6, 2026); *see also id.* (rejecting argument that a petitioner's "re-detention was permissible because of [a pending] criminal charge"). Given the absence of any procedural safeguards, the Court concludes that the risk of erroneous deprivation of liberty is high; thus, the second factor also favors Petitioner.

3. <u>The Government's interest in detaining Petitioner without process is low.</u>

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing. As this Court has ruled repeatedly, the Government's interest in re-detaining non-citizens previously released without a hearing is low. Although it

would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Thus, the third and final *Mathews* factor favors Petitioner.

In sum, the Court's review of the *Mathews* factors confirms that Petitioner's re-detention does not comport with due process.

## IV. REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

### A. The Appropriate Remedy is Release

The Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See, e.g.*, *Arevalo-Hortua v. Hernandez*, No. 2:26-CV-02994-JHC, 2026 WL 2797986, at *6 (W.D. Wash. Sept. 18, 2026) ("[C] ourts in this District have concluded that, even when a noncitizen has been arrested or charged, but not convicted, of a crime, when the noncitizen is re-detained without pre-deprivation notice and a hearing, release is the appropriate relief.").

Petitioner requests that the Court enjoin the Government from re-detaining him without first providing a pre-detention hearing. Dkt. No. 1 at 17. The parties dispute who should bear the burden at any such future hearing, with the Government arguing that "it cannot be ordered to bear the burden of proof prior to re-detention," and "at most," it "should be only required to demonstrate dangerousness or flight risk by a preponderance of the evidence." Dkt. No. 7 at 8. Courts in this Circuit have held that "when a noncitizen has previously been released following a determination that he is not a flight risk or danger to the community, and then is subsequently re-detained pending removal proceedings, due process requires a bond hearing at which the government bears the burden of proving that the noncitizen is a flight risk or danger to the community by clear and convincing evidence." *Okoroafor v. Warden of the Cent. Valley Annex Det. Facility*, No. 1:26-CV-06763-KES-CDB (HC), 2026 WL 2806841, at *1 (E.D. Cal. Sept. 18, 2026) (citing cases). Petitioner was released from detention in 2023 after a determination by the IJ that he was neither a flight risk, nor a danger to community; thus, at any future pre-detention hearing, the Government bears the burden of proving otherwise by clear and convincing evidence.

**B. Petitioner's Request to Enjoin GPS or Ankle Monitoring is Denied**

Petitioner also seeks an order from the Court enjoining the Government from imposing GPS or ankle monitoring restrictions. Dkt. No. 1 at 17. He argues that "[s]ince a GPS monitor was not previously imposed as a condition of Petitioner's release from immigration detention, the imposition of one as a condition of release would further unlawfully violate Petitioner's liberty rights, and thus should not be imposed." Dkt. No. 12 at 14. The Government opposes, arguing that the request is "both premature and without legal foundation" where "electronic monitoring (including GPS) is a lawful and commonly imposed condition of supervision under the governing regulations" and "[t]here is no standalone due process right to be free from monitoring." Dkt. No. 7 at 8.

The Court denies Petitioner's request at this time and instead finds it more appropriate to restore Petitioner to his prior conditions of release. As Petitioner acknowledges, the IJ's 2023 bond order permitted DHS to impose alternatives to detention "such as electronic monitoring" at its discretion. Dkt. No. 9-3 at 1. It is true, as Petitioner notes, that "DHS never did so during the nearly three years Petitioner lived in the community on bond." Dkt. No. 12 at 14. However, given that the Court's general practice is to release petitioners under their previous conditions of release, and the prior conditions here expressly contemplate that DHS retains the discretion to impose monitoring, the Court denies this request for specific injunctive relief. *See Singh v. Noem*, No. 2:26-CV-00766-TLF, 2026 WL 1045507, at *6 (W.D. Wash. Apr. 17, 2026) ("[T]he Court denies petitioner's request for an order enjoining the Government from placing a GPS monitor on petitioner upon his release. Rather, under the circumstances, it is appropriate to restore petitioner to the conditions of release he was previously subject to at the time of his re-detention.").

**C. The Government Shall Facilitate Petitioner's Return to Miami**

Finally, Petitioner requests that upon his release, the Government "repatriate [him back] to Miami." Dkt. No. 1 at 17 (citation modified). The Government did not respond to this request in its return. Dkt. No. 7. Because this request is unopposed, and the Court finds that it is appropriate to restore Petitioner to his status before his unlawful detention occurred, the Court will order that the Government facilitate Petitioner's return to Miami.[1] *See, e.g.*, *Josue I.C.A. v. Lyons*, No. 1:25-cv-01542-SKO (HC), 2025 WL 3496432, at *2, 6 (E.D. Cal. Dec. 5, 2025) (ordering the government to return petitioner to Maryland, where he was originally arrested and detained before being transferred to a California facility); *Abdikarim v. Scott*, No. C26-2731-KKE, 2026 WL 2409268, at *4 (W.D. Wash. Aug. 18, 2026) (similar).

[1] Petitioner, of course, remains free to decline the Government's arrangements and make his own travel preparations if he prefers.

## V. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS as follows:

1) Petitioner shall be released from custody NO LATER THAN November 5, 2026, on Petitioner's prior conditions of release. The Government shall return any confiscated property and documents to Petitioner upon release. The Court further ORDERS the Government to finance arrangements to promptly return Petitioner to Miami.

2) Absent exigent circumstances, Petitioner may not be re-detained until after a hearing is held (with adequate notice) to determine whether re-detention is appropriate. At any future pre-deprivation hearing, in order to re-detain Petitioner, the Government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.

4) The Government shall file a declaration NO LATER THAN November 9, 2026, documenting Petitioner's release and the return of his property and documents, in compliance with this order. If Petitioner has not been returned to Miami by that date, the Government's status report shall describe the steps taken to facilitate his return. The Court may order additional status reports as needed.

5) Any fee petition shall be filed within the deadlines set forth by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 4th day of November, 2026.

Kymberly K. Evanson
United States District Judge